Welcome to the 4th Circuit Court of Appeals. We're prepared to hear a case today and we will start out with the case of Cox v. Weber. We'll hear from the petitioner's attorney, Mr. Wright. May it please the Court. We believe that trial counsel failed to act reasonably considering all of the circumstances that she faced. Even under the highly deferential standard of Strickland and the doubly deferential standard of Arrington v. Richter, under which this Court must review the case. Under AEDPA, whether a state court's determination was unreasonable must be viewed with great Mr. Wright, the first issue that probably we might have to deal with, the state makes this question of whether we should even review the fact that this certificate of appeal was granted. Admittedly, I'm not sure it makes much of a difference, but what are your thoughts on it? Well, I believe that Judge Grimm was correct in granting the certificate of appealability. He considered all of the documents. The issue, I believe, was preserved and some of the issues weren't. The question goes, not so much whether he did it right or wrong, but do we have the authority as an appellate court to vacate it if we choose? Vacate Judge Grimm? The certificate of appealability. The circuits are somewhat aligned on it in a particular way. I don't want to spend a lot of time on this because we're going to look at this issue and move forward on it. If you have some additional thoughts on it, it's there. If not, you can proceed on to your argument. Well, I believe the court probably does have authority, but I don't think that you should exercise that discretion to strike Judge Grimm's certificate. I think he's a seasoned jurist who made the correct decision that reasonable minds can differ, and that's the standard. All right. Let me move to your argument as to whether the district court appeared in denying your client's habeas petition. I believe Judge Grimm is correct that the circuit court's finding that the records from central booking were clear that Mr. Cox and Mr. West were never in the same room together is inconsistent with the legal conclusion that Ms. Flynn made a reasonable decision not to introduce them. Now, the finding that they were not in the same room together is also entitled to deference. Those are two different things, aren't they? It seems like that sentence in the order raises a few points. Yes. One is, is it a finding? In other words, most of that paragraph is talking about the petitioner's argument. So is it part of the argument? So it seems like the first question is, is it a finding? And then it seems like the question, if it's a finding, what's it a finding of? It could be a finding that the records on their face show they weren't in the same place, or it could be a finding that they weren't in the same place at all. That latter is what you would like it to be, I take it, but that's not really what it specifically says. I understand that it could have been written more clearly. There's kind of an ambiguity. There's also ambiguity, and I'm sorry to ask a question and then interrupt it, but just to talk about ambiguity, the word although doesn't seem to make much sense in the beginning of the sentence. You would think it would be because if it follows your reasoning. So I think we have some, at least to me, I'm having a hard time understanding exactly what that sentence means. And the whole paragraph seems to have been written quickly. But I sat in the room. I saw what the judge saw. I saw a woman come in in full dress, blue uniform, and Lieutenant Weinberg is a woman. She had very compelling testimony, and there was zero attempt by the state to impeach her or to allege that this institution is a zoo or a mess or chaos. They had the same incentive to do so as a trial attorney would have, but there was none of that. The documents that we introduced, the records themselves, I would just point out, number one, they're self-authenticating documents under Maryland evidentiary rule. They were accompanied by a certificate from the custodian of records. They had a statement that they were made at or near the time of the event by a person with knowledge, made in the course of regularly conducted activities, and it's the regular practice to keep those records. That's why when I showed that document to Mr. Bjorklund, the post-conviction counsel for the state, he withdrew any objection to their authenticity. And they were ultimately let in by consent. So the trial counsel could have done the same thing. She actually had a choice. She could have introduced, she could just hand up the records and explain them in closing, or she could have done what I did, which is go to central booking, talk to the people, figure out a witness who will help you, prepare the witness, and bring them to court to explain those documents. I thought she did that. In these cases, as you know, the difficult cases, the decision to make in cases when trial lawyers know these things, it's an ebb and flow, it's a feel of what's going on in that courtroom. And I thought she gave two explanations. She might not like them, but one was she said she did talk to someone there within the room and within the custodial area and says, you know, we don't know if this is accurate or not, so to speak. And then she gave a lot of credit to the fact that the prosecutor had worked in that area and had maybe some unique knowledge of the fact that those records weren't as accurate as they should be. And the court sort of took it. It doesn't have to be right or wrong, the decision on it, it's a deferential standard, and then there's a double deferential standard with Strickland on it. The question is, does it survive that level to say that it's ineffective not to have done something? Correct. And she made a testimony, a phone call. And this was the most important issue in the case. This was the most important witness in the case. She needed to knock him down. She needed to impeach Michael West. And she had documentary proof that could have done it. And she made one phone call to the institution. She didn't even go there. I had to go there multiple times to get Lt. Weinberg to come. Is there any evidence as to where Johnson was? Yes, not in the record here. It wouldn't have been relevant, but the records are identical. He was accompanying Mr. Cox. He wasn't in any room either. The records actually don't show any of the witnesses, any of these people in a day room. But relevant. It just endows me, at least from a hearsay perspective on it, which really you don't go there on merits, but I'm just thinking about it. Even if Johnson is in the room with West, if Cox is not there, how do you get that statement in? If Johnson was there, it's pure hearsay. How would you then get it in? You wouldn't. So that's my point is, in terms of Johnson, do you need to show that Johnson wasn't there with West, as you say it indicates? No, I don't think the evidence, it was Mr. Cox's tacit admission by not saying no, no, no, that was admitted, not the statement of anything else. It wasn't what Rodney Johnson said. It was the tacit admission of Mr. Cox. And if he wasn't there, if we say, well, Cox wasn't in the room, then that contradicts what Michael West testified to, testified both people were arms length away from. Can I ask you just a clarifying question? I think you say in your brief once that trial counsel refused to get the booking center records before trial. Is that your position or is your position counsel, as she testified, had them and then performed ineffectively by failing to sort of run down a witness who could help vouch for them? She had them. She didn't have a certificate of custodian of records. So when I went to her office, I called her up and said, hey, can I come? Yes, she had the records, but she didn't have the certificate, which is what you need to get in. When I tried to hand in the records, you might remember first the judge excluded them, and then I handed in the certificate under row 5902 of the custodian of records, and it flipped. And both the state and the judge reversed and said, okay, then it comes right in. So she didn't have the certificate. She didn't have what she needed, and she didn't have a witness. And it sounds like in that answer you're suggesting that she had not prepared enough to get them admitted. But what she's saying is that in the phone call, admittedly you did more for sure, but in the phone call she learned of a reliability problem with the records. And also knew, as Judge Wynn talked about, unique, as she calls it, information that the prosecutor may have had, may have been keenly aware of that in her mind. Turns out maybe it wasn't done in the PCR hearing, so maybe that was flawed in some respects, or maybe it didn't materialize. But, you know, trial lawyers often decide not to call a witness if they think the witness might be attacked, and that attack might undermine their theory. And, you know, judges and juries react to good cross-examinations in different ways. I mean, on appeal we might say, well, that's just that issue. But, you know, the dynamics of a trial or effective cross-examination can make all the difference. Absolutely. And so, you know, trial counsel says, I felt like I could do what I did in attacking and crossing West and point the problems or lack of corroboration in closing. Now, that may have turned out to be a bad decision. I think there's a decent argument that the backfire risk here, not as great as they might be in some cases. But isn't that just, you know, even if the wrong decision, a classic strategic decision that we can't use as a basis for habeas relief? So when I thought about the same thought, I thought, well, what if that happened? What if she put on a witness who disavowed the records? Right. That witness could be cross-examined because there you have it, black and white. Even if the witness has some doubt in some people's mind about the reliability of the records, the jury would still have in black and white an entry that they could look at in the jury room. And he would also be cross-examined because there aren't blanks. It's not like there's no entries at all. There are clear entries showing where these guys went. And they weren't in the same room according to these records. It was very clear. So I think she could have survived and at least passed the doubt in one person, one juror's mind. Thank you, Mr. Wright. We will hear from Mr. Welter. Good morning, Your Honors. May it please the Court. Jer Welter on behalf of the respondent officials of the state of Maryland. Trial counsel in this case testified that she made an informed strategic decision not to introduce the offender activity logs in evidence. And applying the Strickland standard, the state post-conviction court found that that decision was not professionally unreasonable. And so now in habeas, applying the 2254D standard, the question is whether the state PCR court's decision contravened or unreasonably applied the Supreme Court's clearly established law in that ruling. And then to that, as I understand it, you would like us to add a third question, sort of, and ask whether the question, when we think about that question, is the answer close enough that the COA should have been issued or is it not close enough so we should vacate the COA? So you want to add a second question to our deliberations? That is correct. Why would we do that? What is the point of that? Well, as you ask, and Judge Wynn asked a similar question, I agree that it can be somewhat academic. And I think as this case shakes out, it perhaps has become somewhat academic. Why is it not academic? It sounds like to me it doesn't make any difference one way or the other on it. It's either debatable or not. If it's not debatable, you're not going to demerit it. It's something you deal with. That's correct. And I'll tell the court that the reason that we filed a cross-appeal and presented that issue is because in granting a certificate of appealability, Judge Grimm hypothesized a different way in which counsel arguably could have rendered it. But he didn't put that in the COA. The COA is limited to should the records have been introduced as part of his defense at trial. You seem to be the only person who read that COA as expanding to reach this evidentiary issue. Your colleague didn't put it in the brief. I don't read it. And given that he didn't put it in the brief, why does that matter? I agree. He didn't put it in the brief, and so it is certificate of appealability aside, it's waived. I believe Judge Grimm's certificate of appealability asked whether counsel was ineffective for not using them. No, it says introducing them as part of his defense at trial. So that doesn't sound like an evidentiary question to me. That sounds like the actual question that everybody thought this case was about, which was should he have introduced the records at trial. And absolutely limited to that issue, we think it is, we don't think a certificate of appealability needed to issue on that point, but I agree that it is academic because we don't need that to prevail here. Let's move that. Yeah. So we submit, you know, frankly that the PCR court was exactly right in its conclusion under Strickland, but again, it doesn't need to have been exactly right. It just needs to not have contravened or unreasonably applied clearly established law. Let's talk about it. You know, accepting trial counsel's representation and testimony about what happened, there is, you know, a question that these records aren't as reliable as they might appear on their face. And if, so if you introduce them, you introduce them and all the state has is West saying that. And you introduce records that say they weren't in the same place. And someone gets cross examined and says, hey, those records aren't always reliable. You know, it seems to me, you know, it most you have is a question about what otherwise would destroy the testimony. So, I mean, almost the worst case scenario goes from, you know, giving the plaintiff a home run to creating reasonable doubt. I mean, I get the issue of, hey, if something can really backfire, you've got to make a decision. But here the backfire risk seems at worst to be neutral, probably to create reasonable doubt and maybe to completely exonerate. Well, I, I, I think that counsel, you know, has to make a decision. And she talked about she was concerned about the vulnerability of that testimony. And, you know, when you go into trial as defense counsel and start, and don't just put the state to its burden, but start introducing evidence, if that evidence is shown to be uncredible. Isn't that the point, though? I mean, what if you, you know, if you had, you got West to testify, what if you had another inmate to say, no, he wasn't in there. He was another place. It would be the same as that record. But then you've got a bunch of people who are going to come in and say, oh, he's a liar. He's someone with no credibility. Do you think if you don't introduce the testimony of this other witness who says he's not there when the only evidence in this case, this is, this is an interesting case because it really narrows this issue. I don't think I've seen one as narrow as what's here. You can't get that gun in because that's already suppressed. You can't get anything. Only evidence you have is West's testimony. That's correct. That's right. Only evidence is West. And so if you have something, a document that is, can be introduced into the record that points, this is a, this is a document of the correction. Since it wasn't even in the room with him and you make a strategic decision, well, somebody would come in and say, we don't, that thing is not always accurate. Or the prosecutor has some special expertise and he'll get up and talk. Well, they have information that's not direct. I mean, what you have here is a statement in the regular course of business that says he's not in the room with West at a time West says he had a conversation with him. That's a problem, isn't it? Well, Judge Wendt, I do want to step through what the offender activity logs show because part of the problem is that I agree that the offender logs never show them in the same room at the same time. But the offender activity logs don't, both, one of them does not cover the time that Mr. West testified. That's not part of the strategic decision. That's not what, that's not what trial counsel said. I mean, you can go that way, but if we're looking at the trial counsel's strategic decision, we've got to examine the decision. We give great deference. Being a trial lawyer is hard. I don't think any of us wants here to play ticky-tack or you could have done this or that. But it seems like the classic risk that you face with calling a witness is that if you call them, you may get something real good. But something bad may happen if you do it. And I can't see the bad for the defense, given what we have here. They've already put their case on, the government's put their case on. It hinges 100% on West. They don't have another prisoner or prison employee who's going to corroborate. So by the time you're sitting there in trial, there is nothing other than West there is to support the case. And you have evidence that would undermine it completely on your best day. And then if it gets attacked, you're like, okay, I got some questions about it. I just don't see the backfire downside. Well, counsel testified that she was concerned about the vulnerability. I take that to mean the vulnerability of the credibility of that being undermined by the witness saying that these records were not reliable. And so you can clearly see it's not just her testimony. You can see in the trial record what her strategy was. So rather than introduce the records, what she does is she cross-examines Mr. West. And she establishes that they are barcoded and that there would be records establishing where they were. And then she makes the choice in closing argument to then say, look at the state. They have not brought in these records. Where are these records? That's a reasonable strategic. There's more than one way to skin this cat. And she chose one. And she may have chosen poorly. But that is not the Strickland standard. And it's certainly not the 2254D standard. Let me ask you. Is this akin to an alibi defense? I mean, would it be sort of similar in the same family that basically you weren't there? I'm somewhere else. And if you had an alibi, is that something you can, I mean, the end result here is a pretty long sentence, which he's going to get if he's convicted on it. And I'm just wondering, is it akin to an alibi? I guess I do see the analogy to an alibi. I don't know that it. Would you have a duty to, which is not part of it, but it's curious to me, that if you have evidence that a defendant is not there, does the lawyer have a duty to tell the client? And if you tell the defendant and the defendant says, I want it in, can that lawyer, well, I know he can, but does that factor in? Because it is apparent here, of course, this is after he's convicted, he's dealing with it. Of course, anybody would say, I want the evidence in after he's convicted. I got that. But you got this piece of paper that says this, and I think it would be hard as anything in this world to get a defendant to say, no, I don't want to put this in, even though it's in the record, it's a government record, because somebody is going to come in and say, well, this thing is not accurate or something. But at the very least, does the question of whether a choice should be given to a defendant in an instance, I mean, we make choices like if a defendant wants to take the stand and tell a lie, we got little ethical rules to deal with it. You can't keep him from taking that stand if he wants to do it. But I mean, it's fuzzy. It's fuzzy, and that's why I say this case presents an issue that we don't normally see it like this, where usually we can say harmless error. There's a whole bunch of other stuff out there. We can't do that here, because you got one evidentiary piece here that allows for the conviction. I've never seen a case that, well, I shouldn't say that, I rarely see a case so narrow in terms of the evidence that's used for conviction. Well, Judge, I'm certainly not aware of a Supreme Court decision that says, even in the alibi context, that it is not for the defense attorney to make that strategic decision. Obviously, most defense attorneys are going to do that in consultation with the counsel. But can you keep it from, and I guess the assumption here would be that it's not there, because there's nothing to show he actually knew about it. Can you not tell the defendant that you have this evidence? And there's nothing there, I mean, because she doesn't testify about his position on it at all, or that I explained it to him, or any of that. Is there any of that duty beyond perhaps an ethical rule in terms of trial process? You see how this gets fuzzy. Well, again, Judge Wynn, I mean, I don't think that there's any claim being made about a failure to consult as a basis for ineffective assistance of counsel. Again, the claim has always been failure to introduce it at trial before the jury, that that is the basis of the claim. And this court's cases, I think Porter v. Zook is the closest one where counsel chose not to call a witness who would give exculpatory testimony because he did not believe the witness would be credible. And that decision was held to be reasonable under Strickland, and certainly that was not overturned under the even more deferential 2254D standard. We keep saying, and it's certainly true, that we defer, and we defer to strategic decisions. And maybe, you know, I'm out here, I think your point is helpful in the sense that, you know, it does appear that trial counsel got the information, it does appear, you know, that the cross-examination of making the decision that, you know, she said she did, that she cross-examined West, you know, seemingly effectively, and made the argument at closing just like you described. So having made that decision, she certainly goes about, you know, doing this, and she's an experienced counsel and all that. I'm just like, you know, maybe this isn't the case, but at what point is a decision so patently wrong that you don't get that deference? I mean, and here, when everything hinges on West, the government's case is over, and the worst that comes out of it is the documents that show they might not be reliable. Are we at the point that, are we at the line? And if not, what is? I don't think we are at the line, and in part because, as I indicated, and I admit that counsel didn't really address this, defense counsel, in her testimony at the first conviction hearing, but these records are not, just on their face, not as clear cut as that. I mean, they, the record, and they are at JA 402 and 403. Mr. West's, this page of his record cuts off at 3.17 in the morning on the 29th, which is the day that the conversation, that he testified the conversation happened, after 8 o'clock in the morning. So this record just does not show where Mr. West was at the time the conversation happened. It does show that Mr. Cox was in 2N19, which, by the way, looks like a typo in the transcript of Lieutenant Weinberg's testimony. She says 2A19, but I think it's just the transcription is mishearing. That he is that morning of the 29th, from 9.55 to shortly after noon, in 2N19, which is described as a group hold cell. Maybe that's the day room they're talking about. Lieutenant Weinberg isn't questioned about what that is. We don't know from these records where Michael West was. And so, and then regardless of what the records purport to show, counsel has from the custodian of records, they're going to testify, well, they're not necessarily reliable. Let me throw out something else that's interesting in this case that I haven't seen come up. I think this lawyer potentially has a powerful piece of information that's really not in this record. The co-defendant, Johnson, is acquitted, and he's the one that actually shot the person according to the testimony. Did West testify in that case? I don't know the answer to that, Your Honor. Well, what other answer can there be? The gun is suppressed. The only testimony, unless he pleaded, well, he didn't plead because he's acquitted, has to be West. And if West got on the stand and whoever did the cross-examination of it didn't introduce this information and he's acquitted, I don't think I've seen a case like that either. That would be a powerful incentive to that second attorney to say, I'm going to do the same thing that was done in the case of the one who actually did the shooting who got acquitted in this case. But I haven't seen that. I mean, to me, that differentiates this case in a way, if that's so. But you say you don't know, but there can only be one answer under this unless there's something else that was introduced that Johnson, a basis for the prosecution. Well, I see that my time has expired, but if I can. If you don't know the answer, it won't help. I mean, because that's not really I'm just saying I got it. But I just point that out just as an interesting piece of this case that it seems to me that a counsel who's following the second case of someone who is acquitted and the only evidence that looks like could have it is the same thing in this case. I would probably do what that counsel did, too, and that is track the same thing and not take the chance. That's a stronger argument than what's going on here. And I don't understand why it's not put in. Well, I will say, Judge, when we don't know what was put in in Mr. Johnson's trial, I simply don't know. And it's certainly not in the record. But one thing that we also don't know is whether Mr. Johnson's. Oh, yeah, we know. We know there's no other evidence. We know that there's no gun that can come in. We know that there's no other witness that anybody had heard of because you didn't use it in this case. We what we is pretty straight up. We got to believe West went in and testified what what Johnson, because he definitely can testify what Johnson told him if Johnson's in the room. So so and this is direct. This is not adoption of Johnson's statement. This is he's saying that Johnson Johnson's acquitted. So a lawyer that does this, I'm giving you something to work with here, but you didn't give it to. I think I am. But but that doesn't make any sense to me that he's acquitted. And if the second counsel's come around, he's dealing with a co-conspirator and the same evidence that would give her a reason not to introduce. That would be because this one was acquitted. He is definitely guilty because he did issue. He talked to it, but he's quit it. I'm not going to take that risk and put in this case and have a different result. I mean, doesn't that make sense? I think I think it does. But I've seen it anywhere. It doesn't make it. We can hypothesize it. I don't know. I mean, the other thing that we don't know is, well, we could hypothesize it. But this is not a hypothetical. That is exactly what that's that's in front of your face. And there's got to be some reason that was not done. But I don't know the reason why that would not. You tell me that. No, I know the judge didn't allow the evidence during the trial of the quid in. But we're talking about the decision of the trial counsel. So what went on in that trial to me, at least it seems to me, would be relevant in the next in determination of decision of the of the of the council, not in the termination of guilty innocence of the defendant. That's correct, isn't it? It may be relevant, but we don't know. It wasn't put into evidence of conviction. And it's simply not. So you don't have any other information about what happened in the first trial trial? I don't. In addition to it not being in the record, I don't know. I was just curious. We'll come back to you. Look like you've served two minutes to tell us something beyond what you're telling us now. And we'll listen to Mr. Wright here. You have a few minutes to respond. Thank you, Your Honor. Just a few comments based upon the questions. Respond to what I just hypothesized there. Respond to that in terms of you. You probably tried cases quite a bit. And you're in a situation. You've got co-defendants. One of them has been acquitted. He's the guy who actually pulled the gun and shot him. Let's assume that. Yes. And there's nothing else. And we don't have it in the record. But there's nothing else to point to but that you had to have had West to testify in that case. And the question, of course, from your perspective, if that counsel actually introduced the record, oh, that's a powerful incentive the other way. If he didn't and got the result of acquittal, it doesn't determine. But it certainly makes you think if I'm a counsel, the decision has to be pretty reasonable. I saw that happen. That was not. And I'm not going to take this chance in this case and get acquittal. I think she, when the co-defendant was acquitted, she thought the game was over. And either. Do you know as to whether this record was introduced in Johnson's trial? No, I don't know. What do you mean? I didn't understand your previous answer. I thought the game was over. I think she thought that either the court would let her introduce the fact of the acquittal or that she could literally call Johnson as a witness. And now we have a guy who's going to call Johnson as a witness. That would not have worked. That would have been bail practice. That's what she tried to do. She tried to do it. Johnson is a direct witness. And he's the one that supposedly told Wes. She's not going to put him on the stand to do that. And he's probably. She wanted to get on the fact of the acquittal. And that therefore, Mr. Cox is accused of aiding and abetting an innocent person. That would be the classic. That's the contrast that maybe we have here. You get the acquittal on the record, but he has to testify about what actually happened. That's the sort of risk-benefit decisions that you normally do. He's not going to testify that he went and shot somebody. He was acquitted. He denied shooting the guy. And he was absolutely acquitted. There was another question about what Mr. Cox knew about the records. I don't know where in the record, but I'm pretty sure he testified that he wrote a letter to Ms. Flynn asking her to use them. He was absolutely adamant about using these records. And in terms of the argument of not calling witnesses that might prove not to be credible, you have to do more work, more effort. You have to get out of your chair and go talk to people, not on one phone call. And even if that had happened, there was documentation that still would have gotten in. Thank you, Your Honor. Thank you, Mr. Wright. Mr. Welter, if you choose, you have a couple of minutes. Your Honor, unless the Court has questions for me, we would simply ask you to either reverse the certificate of appealability or simply affirm it. All right. Judges, anything further? All right. Thank you, gentlemen, both, for your arguments today. The Court will adjourn. Signed, aye. And then we will proceed to come down in our tradition Greek Council and close for the day. The Court stands adjourned. Signed, aye. God save the United States and this honorable Court.
judges: James Andrew Wynn, Pamela A. Harris, A. Marvin Quattlebaum Jr.